IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN THE MATTER OF THE SEARCH
OF A SILVER APPLE iPHONE 16
PRO MAX CELLULAR DEVICE
CURRENTLY LOCATED
AT THE ESCAMBIA COUNTY SHERIFF'S
OFFICE

Case No: 3:25mj89-ZCB

IN THE MATTER OF THE SEARCH
OF A RED APPLE iPHONE 12
CELLULAR DEVICE WITH A
CLEAR CASE CURRENTLY
LOCATED AT THE ESCAMBIA
COUNTY SHERIFF'S OFFICE
_____/

Case No: 3:25mj90-ZCB

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR
A WARRANT TO SEARCH AND SEIZE**

I, Joseph Scapecchi, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property—electronic devices—which are currently in law

RCVD USDC FLND PN
MAR 13 '25 PM4:09

enforcement possession, and the extraction from that property of electronically stored information described in Attachments B-1 and B-2.

2. I am a sworn Task Force Officer (hereinafter "TFO") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter "ATF") assigned to the Tampa Field Division, Pensacola Resident Office, and have been since July 2021. I am a bonded law enforcement officer and have been employed by the Escambia County (Florida) Sheriff's Office (hereinafter "ECSO") since August 2016. I am currently ranked as a Sergeant assigned to the ECSO Narcotics Unit. I have participated in numerous drug-related investigations that have resulted in the arrest, apprehension, and conviction of those involved in the distribution of controlled substances. I am familiar with the common methods of obtaining and/or manufacturing illegal firearms and/or machinegun conversion devices. I am familiar with the forms of communication that occur for illegally possessed firearms to be transferred from one individual to another. I have prepared, participated in, and executed multiple search warrants for recovery of evidence involving the distribution of controlled substances as well as illegally possessed firearms. I have also conducted numerous investigations for various firearms related offenses, which resulted in the arrest, apprehension, and conviction of those involved. In addition to being a TFO with ATF and a Sergeant in the ECSO Narcotics Unit, I previously spent approximately five and a half years as an

investigator in ECSO's Narcotics Unit and Gun Crimes Unit. I have been a part of hundreds of investigations, including both state and federal investigations, involving narcotics, violent crimes involving firearms, and the illegal possession of firearms.

3.   The information set forth in this affidavit is based on an ongoing investigation into the possession and transfer of a machine gun that was not registered in the National Firearms Registration and Transfer Record that has resulted in the seizure of a Glock .40 caliber handgun with a machine gun conversion device (commonly known as a "Glock switch" or "switch") attached to it. Additionally, the information set forth in this affidavit is based upon information relayed to me by other federal and state law enforcement officers, corroborated sources of information, and my own observations during this investigation.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

4.   I present this affidavit in support of applications for search warrants to search and to seize relevant evidence found within the following cellular devices: One (1) silver Apple iPhone 16 Pro Max (ECSO25OFF003420 Evidence Item #1) (as more fully described in Attachment A-1 and hereinafter referred to as "TARGET DEVICE 1"); One (1) red Apple iPhone 12 with a clear case

3

(ECSO25OFF003420 Evidence Item #2) (as more fully described in Attachment B-1 and hereinafter referred to as "TARGET DEVICE 2");

5. The applied-for warrants would authorize the forensic examination of the devices for the purpose of identifying electronically stored data for evidence of the possession and transfer of a machine gun, which was not registered in the National Firearms Registration and Transfer Record, in violation of Title 18, United States Code, Section 922, and Title 26, United States Code, Section 5861, as more particularly described in Attachments B-1 and B-2.

6. I have not included each and every fact I know about the target(s) of this investigation, or the conduct described herein. Rather, I have included only those facts I believe are needed to demonstrate probable cause for the warrants sought. The information in this affidavit is based on my personal knowledge and observations, on information conveyed to me by other law enforcement officials or cooperating witnesses, and based upon my review of records, recordings, documents and other physical evidence related to the activities described herein.

7. As further discussed below, the investigation has thus far established that Deyonte **BETTIES** utilized TARGET DEVICE 1 and TARGET DEVICE 2.

**PROBABLE CAUSE**

8.      Federal and state law enforcement have been conducting a criminal investigation into BETTIES for the possession and transfer of a machinegun that was not registered in the National Firearms Registration and Transfer Record (NFRTR).

9.      On or about October 14, 2024, Escambia County Sheriff's Office Patrol Deputy Jeremiah Jarratt conducted a traffic stop on an individual by the name of Kewhan LANDRUM for operating a dirt bike on a roadway without a license plate. LANDRUM fled from Deputy Jarratt and other responding deputies but was subsequently taken into custody at 2916 North U Street. LANDRUM was reaching into a red Jeep vehicle at the time he was taken into custody. A black Glock .40 caliber handgun with a machine gun conversion device (known as a "Glock switch") attached to it was located in the floorboard of the vehicle. Two Apple iPhones were located on LANDRUM's person at the time of his arrest.

10.     On or about October 22, 2024, a state search warrant was signed for LANDRUM'S cell phones. During a review of the download of one of LANDRUM'S cell phones, I observed messages between LANDRUM (millermurdagang@textnow.me) and the phone number 850-390-8100 ("Db"), which referenced illegal narcotics as well as firearms. I conducted a records query

5

for the phone number 850-390-8100 which provided that the phone number was listed as the phone number for Deyonte' Xavian BETTIES.

11. I observed messages between LANDRUM and BETTIES regarding the sale of the Glock 23 .40 caliber handgun with the machinegun conversion device attached. These particular messages began in the late evening hours of September 30, 2024, and continued through October 1, 2024. In the messages, BETTIES contacts LANDRUM stating that he has an "arp & g23" for sale. BETTIES provides a photo of a rifle and Glock handgun with a machinegun conversion device attached to it. When asked about a price, BETTIES states $450 for the Glock 23 and $650 for the "arp." Later in the conversation, LANDRUM tells BETTIES that he wants the "g23." BETTIES asks LANDRUM "you want it w the blrrrd?" and LANDRUM replies "Ya I want the blrrd." LANDRUM and BETTIES continue to discuss a price for the Glock and during that discussion BETTIES sends a message stating "this a glizzy w a blrrd alr connected fam." LANDRUM asks BETTIES about the caliber at which point BETTIES informs LANDRUM that it is a "40." During the conversation, LANDRUM tells BETTIES to "Pull up then," at which point BETTIES asks LANDRUM if he is ready, which LANDRUM confirms that he is. The messaging conversation ends when BETTIES tells LANDRUM that he is outside. In the call log, there is an incoming call from BETTIES to LANDRUM approximately 2 minutes after the last message. The

phone call was answered and lasted approximately 8 seconds. Below is the photo that BETTIES provided to LANDRUM:



12. On or about November 1, 2024, I went to 3440 North S Street and made contact with BETTIES. I conducted an interview with BETTIES. BETTIES stated he knew Kewhan LANDRUM by "Kewhan." While collecting general information about BETTIES, BETTIES stated his phone number is 850-390-8100. BETTIES stated he bought the Glock 23 .40 caliber handgun from Gulf Coast Gun Forum, and he sold it to LANDRUM for $425.00 with two magazines and a holster. I showed BETTIES a photograph of LANDRUM that did not contain any personal or identifiable information, and BETTIES positively identified

LANDRUM as being the same individual. BETTIES stated that LANDRUM also gave him five (5) or six (6) Lortab pills, for the firearm. BETTIES stated he did not remember there being a switch on the firearm, but he did remember the message which referenced the firearm already having the "blrrd" on it. BETTIES admitted he sent LANDRUM a picture but claimed it was not the one of the firearm with the switch on it. BETTIES explained he has had his phone number for over a decade and that he is the only one who uses it. BETTIES stated he sold the firearm to LANDRUM approximately a month or 3 weeks ago and that September 30th or October 1st sounded right to him. BETTIES stated when he said "blrrrd" in the messages, he was referring to the switch. BETTIES claimed he was asking if it was attached. BETTIES stated that when LANDRUM purchased the firearm, LANDRUM said that he was going to try and get a switch. BETTIES was sworn to his statements.

13. I asked BETTIES if he understood that switches were illegal at which point BETTIES stated "of course, especially if you don't have a tax stamp." BETTIES stated he does not have a tax stamp. A records check through the National Firearms Registration and Transfer Record provided that neither LANDRUM nor BETTIES have the Glock .40 caliber handgun with the machinegun conversion device registered to them.

14. On or about January 29, 2025, BETTIES was indicted in the Northern District of Florida for a violation of 18 USC 922(o) – unlawful possession of a machine gun and a violation of 26 USC 5861(d) – receive or possess firearm not registered in the National Firearms Registration and Transfer Record.

15. On or about March 1, 2025, a deputy with the Escambia County Sheriff's Office conducted a traffic stop on a vehicle being driven by BETTIES due to a headlight being out. BETTIES was arrested pursuant to his federal arrest warrant. At the time of the arrest, BETTIES was in possession of TARGET DEVICE 1 and TARGET DEVICE 2 which were detained and submitted to evidence at the Escambia County Sheriff's Office.

16. I reviewed the ECSO deputy's body camera video. I observed that at the time BETTIES was taken into custody, he was holding TARGET DEVICE 1 in his hand. During a search of BETTIES' person, the deputy located TARGET DEVICE 2 in BETTIES' right pocket.

17. TARGET DEVICE 1 and TARGET DEVICE 2 are currently in the lawful possession of the Escambia County Sheriff's Office in Pensacola, Florida. In my training and experience, I know that TARGET DEVICE 1 and TARGET DEVICE 2 are stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as when the Devices first came into the possession of the Escambia County Sheriff's Office.

18. Based on the above facts and circumstances, there is probable cause to believe evidence exists on the phones pertaining to the unlawful possession and transfer of a machinegun such as photographs of the machinegun conversion device as well as messages and/or contact information which would show how BETTIES obtained the machinegun, as I know that BETTIES takes photographs of firearms on his cellular devices and communicates via text messages regarding the sale and transfer of firearms, as noted above.

19. During the course of my training and experience and through conversations with other more experienced law enforcement officers, I have learned of various methods used by firearms traffickers to illegally acquire, possess, and sell firearms and/or machinegun conversion devices. Based on my training and experience, and through conversations with other officers and agents, I know the following:

   a. Firearm traffickers often utilize cellular telephones to facilitate communication with co-conspirators and/or store telephone numbers/addresses of associates;

   b. Firearms traffickers often utilize multiple cellular telephones to compartmentalize their firearms trafficking business. Multiple cellular telephones are often utilized in an effort to maintain anonymity and independent contact between sources of supply and a

range of customers;

c. Firearm traffickers maintain records, receipts, notes, ledgers, and other items relating to the transportation, ordering, sale and distribution of firearms, which are usually maintained where the traffickers have ready access to them and are often stored on digital media;

d. Firearms traffickers commonly maintain addresses or telephone numbers in devices which list names, addresses and/or telephone numbers of their associates in the trafficking organization; such records are normally maintained within places/things under their control;

e. Firearms traffickers take or cause to be taken photographs of themselves, their associates, their property, and the firearms they possess and distribute or U.S. currency they possess, and often maintain these photographs within places/things under their control, including on cellular devices;

f. Firearms traffickers commonly use cellular telephones in order to communicate with their criminal associates and those telephones are commonly carried with them or kept at locations under their custody and control, such as their residences and vehicles, and contain names,

11

numbers and other information stored in the phones; and

g. Firearms traffickers commonly are involved in money laundering and retain records of their transactions within places/things under their control. Records of this kind are also often stored on digital media.

20. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachments A-2 and B-2 this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore,

    contextual information necessary to understand other evidence also falls within the scope of the warrant.

 e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the devices consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because these warrants seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrants at any time in the day or night.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the devices described in Attachments A-1 and B-1 to seek the items described in Attachments A-2 and B-2.

Respectfully submitted,

_____
Joseph Scapecchi
Task Force Officer
Bureau of Alcohol Tobacco Firearms
and Explosives

Subscribed and sworn to before me on this 13th day of March, 2025.

_____
Zachary C. Bolitho
United States Magistrate Judge